UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAA MOHAMAD, et al., <br> Plaintiffs, <br> v. <br> X-THERMA INC., et al., <br> Defendants. | Case No. 21-cv-03867-JCS <br><br> **ORDER GRANTING MOTION TO COMPEL PLAINTIFF TO ARBITRATION** <br><br> Re: Dkt. No. 30 |

## I.   INTRODUCTION

Plaintiff Elaa Mohamad was employed by Defendant X-Therma as Chief Business Officer until September 2020, when he was terminated. He asserts that his termination was discriminatory, breached his employment contract and was in retaliation for his complaints about racist and offensive conduct by employees of X-Therma and by its CEO, Defendant Xiaoxi Wei. He also asserts that X-Therma and Wei violated the Federal False Claims Act, 31 U.S.C. § 3729, and the California False Claims Act, Cal. Gov't. Code section 12650, and that his termination was in retaliation for his whistleblowing activity in connection with these violations. Presently before the Court is Defendants' Motion to Compel Plaintiff to Arbitration ("Motion"). In the Motion, as amended in the Addendum (dkt. 32), Defendants ask the Court to order to arbitration all of Mohamad's claims except the claims asserting false claims act violations, Claims Eight and Nine, which they contend should be stayed. **The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for November 18, 2022. The Initial Case Management Conference set for the same date is also**

**vacated**. For the reasons set forth below, the Motion is GRANTED.[1]

## II. BACKGROUND

### A. Allegations in Complaint

Mohamad alleges that he is "a foreign national and citizen of Croatia" who "is a seasoned strategic business advisor with more than a decade of experience as a successful fundraiser." Complaint ¶ 4. According to Mohamad, he "joined Defendant X-Therma in January 2019 as a full time employee, strategic advisor and co-founder, mainly responsible for fundraising and business development, guiding strategy, establishing corporate governance and supporting and coaching the Chief Executive Officer (CEO)." *Id.*

X-Therma is a "chemical technology company operating in Richmond, California" that developed a "convergent biopreservation platform intended to advance regenerative medicine by developing ice prevention material using cryobiology and nanoscience." *Id.* ¶ 5. It was founded by Defendant Wei (the CEO of X-Therma) and her husband, Mark Kline (who is the Chief Technology Officer). *Id.* ¶¶ 5-6. Mohamad alleges that X-Therma was launched in 2014 and that "as one of the co-founders of the Organ Preservation Alliance (OPA)[,]" he played a "pivotal role" in obtaining initial funding for X-Therma through government grants. *Id.* ¶ 7. According to Mohamad, "[t]he OPA is a non-profit that 'jump-started' the research field of cell/tissue/organ preservation and led to the launch of a $300 million program by the Obama Administration to support research and clinical projects." *Id.* Mohamad alleges that "[i]t was OPA's groundwork that lay the foundation for X-Therma's early funding" and that "[t]he first grant to X-Therma from the Dept. Of Defense was co-written by OPA." *Id.*

Mohamad alleges that he "freely provided advice" to X-Therma between 2015 and 2018, but in January 2019 he "was so excited by the possibilities of X-Therma's work that he left his lucrative position and life in Croatia, and relocated to California." *Id.* ¶ 8. He further alleges that "[c]ommencing on or about February 22, 2019, [he] entered into a series of written employment agreements with X-Therma" and "executed a subsequent Stock Option Agreement on

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

or about January 21, 2020." *Id.* ¶ 9 & Exs. A, B. He alleges that "on January 21, 2020 and February 22, 2020, the Board of Directors of X-Therma, including Wei and Mr. Kline, resolved to provide additional employment benefits to Mr. Mohamad, including an increase in salary to $150,000 per year, a one-time bonus of $70,000 and fully vested stock option grants of 188,250 shares." *Id.* ¶ 9 & Exs. C, D (Board resolutions).

Mohamad alleges that throughout the period when he was employed by X-Therma, Wei "routinely" made racist comments, and that although he frequently complained to Wei and Kline about these comments, his complaints led to only "minimal improvement" in Wei's conduct. *Id.* ¶ 11. Mohamad also alleges Wei and Kline took no corrective action when he complained about racist comments by other employees. *Id.* ¶¶ 11-13. One incident occurred on August 28, 2020, when "during a work-related gathering, a new employee told a racist story about two Black men in front of the entire workforce." *Id.* ¶ 13. According to Mohamad, when he complained to Wei that the comments were offensive to him and other Black employees, she dismissed his complaints as unfounded. *Id.* Further, when he "requested an urgent meeting to address this employee's [m]isconduct[,]" his request for an in-person meeting was denied. *Id.* ¶ 14. "Instead, a meeting was convened via ZOOM and X-Therma fired Mr. Mohamad." *Id.*

Mohamad also alleges in the Complaint that "[o]n multiple occasions, [he] questioned whether Wei and Mr. Kline were engaging in self-dealing transactions and misappropriation and/or embezzlement of funds." *Id.* ¶ 47. Among other things, Mohamad alleges that he discovered that Wei's mother had been put on the X-Therma payroll and health insurance even though she had performed no work for X-Therma, to which he "strenuously objected." *Id.* ¶¶ 48-49. He also alleges that he discovered that Wei and Kline were charging personal items on the X-Therma credit card and "confronted" them about it. *Id.* ¶ 50. According to Mohamad, ten days before he was fired, "Kline threatened to fire [him] if he did not stop asking for explanations about their spending habits." *Id.* ¶ 52.

Mohamad asserts the following claims in his Complaint: 1) retaliation for opposing racial discrimination and harassment under 42 U.S.C. § 1981 (Claim One); 2) National origin discrimination under 42 U.S.C. § 1981 (Claim Two); 3) retaliation for opposing discrimination

1  under Cal. Gov't. Code section 12940(h) (Claim Three); 4) discrimination based on national origin
2  under Cal. Gov't. Code section 12940(a) (Claim Four); 5) wrongful termination in violation of
3  public policy under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980) based on termination
4  for opposing discrimination (Claim Five); 6) wrongful termination in violation of public policy
5  under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980) based on violation of California
6  False Claims Act (Claim Six); 7) wrongful termination based on violation of the Federal False
7  Claims Act, 31 U.S.C. § 3729 (Claim Seven); 8) violation of the Federal False Claims Act, 31
8  U.S.C. § 3729 (Claim Eight); 9) violation of California False Claims Act, Cal. Gov't. Code
9  section12650 (claim Nine); 10) breach of contract (Claim Ten); 11) breach of implied covenant of
10 good faith and fair dealing (Claim Eleven); and 12) declaratory relief in the form of a declaration
11 that "X-Therma is precluded from exercising any alleged right to repurchase his fully vested
12 shares or otherwise attempt to divest Mr. Mohamad of his ownership of X-Therma stock and/or
13 stock options, and that Mr. Mohamad is the legal owner of 170,000 fully vested Common Class A
14 shares of X-Therma's stock and 188,250 fully vested stock options" (Claim Twelve).

### B.   The Arbitration Agreement

Mohamad signed an at-will employment agreement with X-Therma on February 22, 2019. Complaint ¶ 9 & Ex. A (Employment Agreement). The Employment Agreement contains the following arbitration provision ("Arbitration Provision"):

> 12. ARBITRATION AND EQUITABLE RELIEF
> A.   *Arbitration*. IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES WITH ME, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES, AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES THAT I MAY HAVE WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER DIRECTOR, SHAREHOLDER, OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT OR RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT AND PURSUANT TO THE ARBITRATION PROVISIONS SET FOR IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2 (THE "CCP ACT") AND CALIFORNIA LAW. **I AGREE TO ARBITRATE ANY AND ALL COMMON LAW AND/OR STATUTORY CLAIMS UNDER LOCAL,**

**STATE, OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, . . . AND CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND BREACH OF CONTRACT, EXCEPT AS PROHIBITED BY LAW. I ALSO AGREE TO ARBITRATE (EXCEPT AS PROHIBITED BY LAW) ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE, BUT NOT DISPUTES ABOUT THE ENFORCEABILITY, REVOCABILITY OR VALIDITY OF THIS AGREEMENT TO ARBITRATE OR ANY PORTION HEREOF. WITH RESPECT TO ALL SUCH CLAIMS AND DISPUTES THAT I AGREE TO ARBITRATE, I HEREBY EXPRESSLY AGREE TO WAIVE, AND DO WAIVE, ANY RIGHT TO TRIAL BY JURY.** I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.  I UNDERSTAND THAT NOTHING IN THIS AGREEMENT CONSTITUTES A WAIVER OF ANY RIGHTS I MAY HAVE UNDER APPLICABLE LAW, INCLUDING, BUT NOT NECESSARILY LIMITED TO, SECTION 7 OF THE NATIONAL LABOR RELAT IONS ACT OR THE SARBAN ES -OXLEY ACT, INCLUDING ANY RIGHTS PROHIBITING COMPULSORY ARBITRATION. SIMILARLY, NOTHING IN T HIS AGREEMENT PROHIBITS ME FROM ENGAGING IN PROTECTED ACTIVITY, AS SET FORTH BELOW.

B.  *Procedure*.  I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAILABLE AT http://www.jamsadr.com/rules-employment-arbitration/  AND FROM HUMAN RESOURCES. I AGREE THAT THE ARBITRA TOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDI NG MOTIONS FOR SUMMARY JUD GMENT AND/ OR ADJUDICATION, AND MOTIONS TO DISMISS AND DEMURRERS, APPLYING THE STANDARDS SET FORTH UNDER THE CALIFORNIA CODE OF CIVIL PROCEDURE. I AGREE THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. I ALSO AGREE THAT THE ARB ITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR MAY AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, WHERE PERM ITTED BY APPLICABLE LAW. I AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE AND THE CALIFORNIA EVIDENCE CODE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT-OF-LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT

ANY ARBLTRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN ALAMEDA COUNTY, CALIFORNIA.

C. *Remedy*. EXCEPT AS PROVIDED BY THE CCP ACT AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE CCP ACT OR THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE OR PARTICIPATE IN A COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

D. *Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE, OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE SECURITIES AND EXCHANGE COMMISSION, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOW EVER, PRECLUDE ME FROM PURSUING A COURT ACTION REGARDING ANY SUCH CLAIM, EXCEPT AS PERMITTED BYLAW.

E. *Voluntary Nature of Agreement*. I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING **THAT I AM WAIVING MY RIGHT TO A JURY TRIAL**. FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

Complaint, Ex. A.

### C. Contentions of the Parties

In the Motion, Defendants argue that all of Mohamad's claims are subject to arbitration under the Arbitration Provision, but in the addendum and their Reply brief, they implicitly concede that Claims Eight and Nine, for violation of the California and Federal false claims acts, belong to the government rather than to Mohamad and therefore are not subject to the Arbitration Provision. In his Opposition, Mohamad does not dispute that Claims One through Seven and Ten through Twelve fall within the scope of the Arbitration Provision but argues that his claims for retaliation under the California and Federal false claims acts (Claims Six and Seven), like his claims for violation of those laws (Claims Eight and Nine), belong to the government and

therefore, are not subject to the Arbitration Provision.  He also argues that the Arbitration Provision is unenforceable as to all of his claims because it is unconscionable and therefore void.

## III. ANALYSIS

### A. Legal Standards Under the FAA

Under the Federal Arbitration Act ("FAA"), a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability, that is, "whether the parties have submitted a particular dispute to arbitration[,]" is, "'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).   The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. at 339). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects,

and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id*. at 303.

### B.     Whether Claims Six and Seven Fall Within Scope of the Arbitration Provision

The parties' only dispute as to the scope of the Arbitration Provision is whether it covers the retaliation claims asserted on the basis of the California and Federal false claims acts. The Court finds that it does.

Although broad, the Arbitration Provision in this case extends only to claims that "[*Mohamad*] may have with anyone . . . arising out of, relating to, or resulting from [his] employment or relationship with [X-Therma] or the termination of [his] employment or relationship with [X-Therma]." Complaint, Ex. A (Employment Agreement), ¶ 12 (emphasis added). It is well established that damages claims for fraud on the government under the California and Federal false claims acts belong to the government, not the relator who asserts the claim. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 800 (9th Cir. 2017) ("though the FCA grants the relator the right to bring a FCA claim on the government's behalf, an interest in the outcome of the lawsuit, and the right to conduct the action when the government declines to intervene, our precedent compels the conclusion that the underlying fraud claims asserted in a FCA case belong to the government and not to the relator."); *People ex rel. Strathmann v. Acacia Rsch. Corp*., 210 Cal. App. 4th 487, 492 (2012) ("Under California law, a qui tam action is brought on behalf of the People of the State of California, and the People are the real party in interest.") (cleaned up).

On the other hand, retaliation claims under the California and Federal false claims acts are asserted on behalf of the individual who was retaliated against for engaging in protected activity. *See United States v. Aerojet Rocketdyne Holdings, Inc*., 381 F. Supp. 3d 1240, 1250 (E.D. Cal. 2019). As the court in *Aerojet* explained,

> The issues involved in the FCA claims differ from those involved in relator's employment-based claims. Relator's FCA claims concern fraud that defendants allegedly perpetrated on the government, while relator's employment-based claims concern the alleged violation of *his own rights during his employment*. Resolution of relator's

> employment-based claims will not narrow the factual and legal issues underlying the FCA claims. While relator brings one of his employment claims under the FCA, "[t]he elements differ for a FCA violation claim and a FCA retaliation claim."

381 F. Supp. 3d at 1250 (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (emphasis added)). Thus, in *Aerojet* the Court found that the Federal false claims act fraud claim was not arbitrable but ordered to arbitration the retaliation claim asserted by the plaintiff under that Act. *Id.*

Likewise, the Court finds that the retaliation claims asserted under the Federal and California false claims acts in this case belong to Mohamad and fall within the scope of the Arbitration Provision.

### C. Whether the Arbitration Agreement is Void Because it is Unconscionable

Unconscionability may invalidate an arbitration agreement, but "the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). "The degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause." *Id.* "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Id.* (citation omitted). These two factors are evaluated on a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to" conclude that the term is unenforceable. . . . Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." *Id.* (citations omitted). Mohamad argues that the Arbitration Provision is both procedurally and substantively unconscionable and therefore should not be enforced, but his evidence of procedural unconscionability is thin and unpersuasive and he has made no showing as to substantive unconscionability.

#### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise. The oppression component arises from an inequality of bargaining power of the parties to the

contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1111 (C.D. Cal. 2015).

Mohamad points to the fact that agreement to the Arbitration Provision was made a condition of employment, arguing that he had no choice but to sign it in light of Defendants' superior bargaining power. Opposition at 5. He further contends that because it was contained in a "prolix, single-spaced 17 page document" "he could not anticipate that by agreeing, he would be waiving his right to a jury trial, waiving his right to petition the court for relief, waiving his right to seek damages against other employees for discrimination, harassment or retaliation." *Id.* Yet the allegations in the Complaint and evidence in the record undercut both arguments.

The California Supreme Court has recognized that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000). Here, however, the allegations in the Complaint indicate that Mohamad was not the typical employee who is not in the position to refuse the job because of the arbitration provision or to bargain over that provision. Rather, he alleges he was a "seasoned strategic business advisor with more than a decade of experience as a successful fundraiser" and had a "lucrative position and life in Croatia" before coming to work at X-Therma. Complaint ¶¶ 4, 8. Furthermore, at the time he was offered the position at X-Therma he had gained unique qualifications to work as its CBO, having played a "pivotal" role in securing funding for the company and getting it off the ground. *Id.* ¶ 7; *see also* Mohamad Decl. ¶¶ 3-4. Under these circumstances, Mohamad has not made a strong showing of procedural unconscionability based on unequal bargaining power.

The evidence in the record also does not support Mohamad's argument that he could not have anticipated that his claims would be subject to arbitration. As Mohamad concedes in his declaration, prior to accepting his position at X-Therma he received a series of offer letters, at least two of which contained arbitration provisions. Mohamad Decl. ¶ 5. The offer letter he actually

1 signed, on October 28, 2018, clearly stated that as a condition of his employment, Mohamad

2 would be required to sign, before his first day of employment, an "At-Will Employment,

3 Confidential Information, Invention Assignment and Arbitration Agreement" that would provide

4 that:

> (i) any and all disputes between you and [X-Therma] shall be fully and finally resolved by binding arbitration; (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) [X-Therma] shall pay all the arbitration fees, except an amount equal to the filing fees you would have paid had you filed a complaint in a court of law.

10 Wei Decl., Ex. 1 (signed offer letter). Mohamad states in his declaration that he was "very busy"

11 when he was told he needed to sign the Employment Agreement and was told he had to sign it

12 "that day[.]" Mohamad Decl. ¶ 6. He also states that the last time he would have seen the

13 Employment Agreement containing the Arbitration Provision was in July 2018 and that he did not

14 have time to read it when he signed it, on February 22, 2019. *Id.* He does not explain, however,

15 what aspect of the Arbitration Provision surprised him – or even why he was surprised he was told

16 he needed to sign the agreement immediately upon commencing his employment – given the

17 language in the offer letter he had signed just a few months before, quoted above.

18 For these reasons, the Court concludes that the level of procedural unconscionability, if

19 any, was minimal.

### 2. Substantive Unconscionability

21 "Substantive unconscionability examines the fairness of a contract's terms." *OTO, L.L.C.*

22 *v. Kho*, 8 Cal. 5th 111, 129–30 (2019). "[U]nconscionability doctrine is concerned not with 'a

23 simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the

24 more powerful party.'" *Id.* (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145

25 (2013)). "They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding

26 price or other central aspects of the transaction, and terms that undermine the nondrafting party's

27 reasonable expectations." *Id.* (citations omitted).

28 Mohamad's argument as to substantive unconscionability merely repeats the legal

11

standards without pointing to any specific term that is unfair. Opposition at 6. Furthermore, his assertion that the Arbitration Provision lacks mutuality is contradicted by the plain language of the provision, which states that "arbitration shall be the sole, exclusive, and final remedy for *any dispute* between me and the company" and that "except as provided for by the CCP Act or this agreement, *neither I nor the company will be permitted to pursue or participate in a court action regarding claims that are subject to arbitration*." Complaint, Ex. A (Employment Agreement) ¶ 12(C) (emphasis added). Mohamad has failed to establish that the Arbitration Provision is substantively unconscionable.

For these reasons, the Court rejects Mohamad's unconscionability defense.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. With the exception of Claims Eight and Nine, Mohamad's claims are ordered to arbitration. Claims Eight and Nine are stayed pending arbitration. The parties shall notify the Court within fourteen (14) days when a final decision has been reached in the arbitration process. In the meantime, the Clerk is instructed to administratively close the file in this case.

**IT IS SO ORDERED.**

Dated: October 25, 2022

JOSEPH C. SPERO
Chief Magistrate Judge